UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                                            Chapter 7

AVRAHAM SOFER,                                                   Case No. 1-13-46127 (CEC)

               Debtor.
----------------------------------------------------------------x
ADAR 980 REALTY LLC,                                             Adv. Pro. No. 1-14-01005 (CEC)

               Plaintiff,

       v.

AVRAHAM SOFER,

               Defendant.
----------------------------------------------------------------x

## **DECISION**

APPEARANCES:

Abraham Neuhaus, Esq.               Avraham Sofer
Neuhaus & Yacoob LLC                1025 East 13 Street
1222 Avenue M                       Brooklyn, NY 11230
Suite 207
Brooklyn, NY 11230                  *Defendant, Pro Se*

*Counsel for Plaintiff*










CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the court on the motion of a creditor, Adar 980 Realty LLC (the "Plaintiff" or "Adar 980 Realty"), seeking summary judgment pursuant to Federal Rule of Civil Procedure 56(a), made applicable here by Federal Rule of Bankruptcy Procedure 7056, against Avraham Sofer (the "Debtor"), denying the Debtor a discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(4)(A), 727(a)(6)(A), and 727(a)(7).

The uncontested facts show that the Debtor refused to obey a court order by operating a business owned by the Debtor after this Court issued a preliminary injunction prohibiting the Debtor from doing so. Moreover, the facts show that the Debtor—as an insider of the debtor in a related bankruptcy case, In re 1040 Management, LLC, Case No. 13-45283-CEC—transferred and concealed property of the estate in that case after the filing of the petition with the intent to hinder, delay, or defraud both the creditors and the trustee in that case. Accordingly, for the reasons set forth below, Plaintiff's motion for summary judgment is granted.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The facts set forth below are not in dispute, except as otherwise noted.

On August 28, 2013 (the "Corporate Filing Date"), the Debtor's wholly owned limited liability company, 1040 Management, LLC ("1040 Management"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Corporate Case"). (Petition, Case No. 13-

45283-CEC, ECF No. 1.) Lori Lapin Jones was appointed as Chapter 7 Trustee of the Estate of 1040 Management (the "Corporate Trustee") on August 28, 2013.

The Debtor and 1040 Management were co-tenants with respect to the parking lot known and located at 980 East 13th Street, Brooklyn, New York (the "Parking Facility") pursuant to a lease dated September 1, 2010 between Management 1040, LLC, Avraham Sofer, and Adar 980 Realty LLC. (Complaint, Adv. Pro. No. 14-01005-CEC, ECF No. 1 ¶ 14.)[1] During the course of operating the Parking Facility, 1040 Management and the Debtor entered into agreements with certain store owners and vendors in the surrounding area (the "Vendors"), under which the Debtor collected money in exchange for providing parking spots to customers of the Vendors. (Complaint, Adv. Pro. No. 14-01005-CEC, ECF No. 1 ¶¶ 18-19; Answer, Adv. Pro. No. 14-01005-CEC, ECF No. 5 ¶¶ 66,106.) In addition, 1040 Management and the Debtor also provided overnight parking to patrons of the Parking Facility on both a nightly and monthly basis. (Complaint, Adv. Pro. No. 14-01005-CEC, ECF No. 1 ¶¶ 20-21.) Further, the Debtor collected money from individuals and other entities in exchange for placing various billboards and advertisements around the Parking Facility (the "Advertisement Customers"). (Complaint, Adv. Pro. No. 14-01005-CEC, ECF No. 1 ¶ 22; Answer, Adv. Pro. No. 14-01005-CEC, ECF No. 5 ¶¶ 70-73.)

On August 29, 2013, Adar 980 Realty filed a motion for relief from the automatic stay in the Corporate Case pursuant to § 362 of the Bankruptcy Code (the "Corporate Lift Stay Motion"), to continue an eviction action pending in state court against the Debtor and 1040 Management. (Mot. for Relief from Stay, Case No. 13-45283-CEC, ECF No. 5.) On September 11, 2014, the Court issued an order scheduling a hearing on the Corporate Lift Stay Motion for October 9, 2013. (Order Scheduling Hearing, Case No. 13-45283-CEC, ECF No. 11.) Following

---

[1] The cited paragraphs of the Complaint set forth allegations that are either admitted in the Answer or not denied.

the hearing on the Corporate Lift Stay Motion, the Court issued an order lifting the automatic stay in the Corporate Case with respect to the Parking Facility on October 9, 2013 (the "Corporate Lift Stay Order") to allow Adar 980 Realty to continue the eviction action pending in state court. (Order Lifting Automatic Stay, Case No. 13-45283-CEC, ECF No. 15.)

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "Individual Case") on October 10, 2013 (the "Individual Filing Date"). (Petition, Case No. 13-46127-CEC, ECF No. 1.) Richard McCord was appointed as Chapter 7 Trustee for the Estate of Avraham Sofer (the "Individual Trustee") on October 10, 2013.

Also on October 10, 2013, Adar 980 Realty filed a motion for relief from the automatic stay in the Individual Case pursuant to § 362 of the Bankruptcy Code (the "Individual Lift Stay Motion"), to continue the eviction action pending in state court against the Debtor and 1040 Management. (Mot. for Relief from Stay, Case No. 13-46127-CEC, ECF No. 5.) On October 11, 2014, the Court issued an order scheduling a hearing on the Individual Lift Stay Motion for November 5, 2013. (Order Scheduling Hearing, Case No. 13-46127-CEC, ECF No. 8.)

On October 18, 2013, the Individual Trustee filed, in both the Individual Case and Corporate Case, an application seeking the entry of an order permitting the Individual Trustee and the Corporate Trustee (collectively, the "Trustees") to jointly operate the Parking Facility for a period of ninety days pursuant to §§ 105 and 721 of the Bankruptcy Code. (App. for Entry of an Order, Case No. 13-46127-CEC, ECF No. 13; App. for Entry of an Order, Case No. 13-45283-CEC, ECF No. 17.) The Individual Trustee requested permission to hire Adar 980 Realty, as managing agent of the Trustees, to operate the Parking Facility. (App. for Entry of an Order, Case No. 13-46127-CEC, ECF No. 13 ¶ 19.) On October 23, 2013, the Court entered an Order authorizing the Trustees to jointly operate the Parking Facility for a period of ninety days,

retroactive to October 10, 2013 (the "721 Orders"). (Order Authorizing the Chapter 7 Trustees to Operate Debtor's Business, Case No. 13-46127-CEC, ECF No. 20; Order Authorizing the Chapter 7 Trustees to Operate Debtor's Business, Case No. 13-45283-CEC, ECF No. 17.) On October 23, 2013, the Debtor refused to turn over control of the Parking Facility to Adar 980 Realty, and, on October 24, 2013 the Court issued an amended order that expressly authorized Adar 980 Realty to operate the Parking Facility as an agent of the Trustees. (Complaint, Adv. Pro. No. 14-01005-CEC, ECF No. 1 ¶¶ 30-32; Amended Order, Case No. 13-46127-CEC, ECF No. 21 at p. 6.; Amended Order, Case No. 13-45283-CEC, ECF No. 19 at p. 3.)

On October 25, 2013, the Individual Trustee filed an adversary proceeding in the Individual Case, and the Corporate Trustee filed an adversary proceeding in the Corporate Case, seeking a preliminary injunction restraining the Debtor from contacting Vendors and Advertisement Customers on behalf of 1040 Management and from entering the premises of the Parking Facility. (Complaint, Adv. Pro. No. 13-01498-CEC, ECF No. 1; Complaint, Adv. Pro. No. 13-01497-CEC, ECF No. 1.) On October 25, 2013, the Court issued an order in each adversary proceeding, temporarily restraining the Debtor from entering upon or conducting business associated with the Parking Facility, and, on November 1, 2013, the Court issued an order enjoining the Debtor from entering the premises for a period of 45 days and closing the Parking Facility, effective October 31, 2013 (the "Preliminary Injunction Orders"). (Order, Adv. Pro. 13-01498-CEC, ECF No. 5; Order Granting Preliminary Injunction, Adv. Pro. 13-01498-CEC, ECF No. 10; Order, Adv. Pro. 13-01497-CEC, ECF No. 4; Order Granting Preliminary Injunction, Adv. Pro. 13-01497-CEC, ECF No. 9.)

On November 8, 2013, the Court issued an order lifting the automatic stay in the Individual Case with respect to the Parking Facility (the "Individual Lift Stay Order") to allow

Adar 980 Realty to continue eviction proceedings in state court. (Order Lifting Automatic Stay, Case No. 13-46127-CEC, ECF No. 35.) The Debtor has admitted that he operated the Parking Facility on November 10, 2014, notwithstanding the Preliminary Injunction Order in effect. (Answer, Adv. Pro. No 14-01005-CEC, ECF No. 5 ¶¶ 43-45; Decl. in Opp. to Motion for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶¶ 5, 8.) The Debtor admitted that he collected fifty dollars while operating the Parking Facility on November 10th. (Decl. in Opp. to Mot. for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶ 7.) The Debtor also admitted that, on November 12, 2013, at the Debtor's direction, the cones that blocked the entry to the Parking Facility were removed so that customers could park there. (Decl. in Opp. to Mot. for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶ 10.) Moreover, the Debtor also admitted that he returned to the Parking Facility on November 13, 2013, to attempt to remove the chains that were blocking the entrance to the Parking Facility. (Decl. in Opp. to Mot. for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶ 11.)

On November 14, 2013, Adar 980 Realty filed a motion in each case to find the Debtor in contempt for violating the Preliminary Injunction Order issued in that case (the "Contempt Motions"). (Mot. for Contempt, Case No. 13-46127-CEC, ECF No. 37.) On November 22, 2013, the Court held an evidentiary hearing on the Contempt Motions, at which the Court found that the Debtor had entered the Parking Facility on November 10, 2014, violating the Preliminary Injunction Orders. (Tr. of Hr'g on November 22, 2013, Case No. 13-46127-CEC, ECF No. 54 at p.114, lines 9-21 and p. 126, lines 18-19.)

On January 13, 2014, Plaintiff filed an adversary proceeding, in the Individual Case, objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727(c). (Complaint, Adv. Pro. No. 14-01005-CEC, ECF No. 1.) On February 6, 2014, the Debtor filed an answer to the Plaintiff's

complaint. (Answer, Adv. Pro. No. 14-01005-CEC, ECF No. 5.) On March 3, 2014, the Plaintiff filed a motion for summary judgment (the "Summary Judgment Motion") and memorandum of law in support of the Summary Judgment Motion, to which the Debtor responded on March 6, 2014. (Mot. for Summary Judgment, Adv. Pro. No. 14-01005-CEC, ECF No. 6; Mem. of Law in Supp., Adv. Pro. No. 14-01005-CEC, ECF No. 7; Opp. to Mot. for Summary Judgment, Adv. Pro. No. 14-01005-CEC, ECF No. 9.)

In the Debtor's answer, the Debtor admitted that he operated the Parking Facility and collected money from Vendors, Advertisement Customers, and other individuals after both the Corporate Filing Date and the Individual Filing Date. (Answer, Adv. Pro. No 14-01005-CEC, ECF No. 5 ¶¶ 61-74; Opp. to Mot. for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶¶ 5-8.) The Debtor also admitted that those funds were property of the estate in the Corporate Case, which is clearly so. (Answer, Adv. Pro. No 14-01005-CEC, ECF No. 5 ¶¶ 66-67.) Furthermore, the Debtor admitted to converting the funds received for personal use and refusing to turn over any money to the Trustees after the Filing Dates. (Id. ¶¶ 62, 64, 67-69, 106.) Specifically, the Debtor admitted to collecting estate funds from Samantha Srour, which he converted for personal use. (Id. ¶ 106 ("[t]o cover Lawyers' Fees and payroll").) Lastly, the Debtor admitted that he instructed Vendors, parking patrons, and Advertisement Customers to pay the Debtor and not the Trustees after the Filing Dates. (Id. ¶¶ 70-73.)

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court's function is not to resolve disputed issues of

fact, but only to determine whether there is a genuine issue of material fact to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (citations omitted). On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs., Corp., 43 F.3d 29, 37 (2d Cir. 1994). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colling LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000) (citations omitted).

Here, the material facts are not in dispute.

## DISCUSSION

Plaintiffs seek denial of Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(A) (concealment of property of the estate within one year of the petition date), 727(a)(2)(B) (concealment of property of the estate after the petition date), 727(a)(4)(A) (making a false oath), 727(a)(6)(A) (failure to obey a lawful court order), and 727(a)(7) (committing the foregoing acts in another bankruptcy case acting as an insider of that debtor).[2] Denial of discharge is an extreme penalty and therefore § 727 must be construed strictly against the objector and liberally in favor of the debtor. State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir. 1996). Courts must exercise even greater caution when considering denial of discharge sought by motion for summary judgment. State Bank of India v. Sethi (In re Sethi), 250 B.R.

---

[2] All statutory citations are to Title 11, United States Code, unless otherwise indicated.

831, 839 (Bankr. E.D.N.Y. 2000).  However, discharge in bankruptcy is a privilege, not a right, and is reserved only for the honest but unfortunate debtor.  Christy v. Kowalski (In re Kowalski), 316 B.R. 596, 600-01 (Bankr. E.D.N.Y. 2004).

Applying this strict standard, the undisputed facts in this case show that denial of discharge is warranted.  The Debtor operated the Parking Facility, without permission, after the Corporate Filing Date.  (Answer, Adv. Pro. No 14-01005-CEC, ECF No. 5 ¶¶ 43-45, 65-66.)The Debtor collected property of the estate in the Corporate Case while operating the Parking Facility and transferred that property to a third party (according to the Debtor, to pay lawyers' fees and payroll) for the Debtor's personal benefit (at least to the extent that funds were used to pay his lawyers' fees).  (Id. ¶¶ 67-68; Decl. in Opp. to Motion for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶ 7.)The Debtor also refused to obey a lawful court order by entering and operating the Parking Facility on November 10, 2013 despite having knowledge of the Preliminary Injunction Order in place. (Answer, Adv. Pro. No 14-01005-CEC, ECF No. 5 ¶¶ 43-45; Decl. in Opp. to Motion for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶¶ 5, 8.)  Moreover, the Debtor instructed Vendors and Advertisement Customers to remit payments to the Debtor and not the Trustees despite knowledge that those monies were property of the estate of 1040 Management. (Answer, Adv. Pro. No 14-01005-CEC, ECF No. 5 ¶¶ 70-73.)  As a result, summary judgment is warranted under §§ 727(a)(6)(A) and 727(a)(7).

**I.**   **Section 727(a)(6)(A)**

Section 727(a)(6)(A) provides for the denial of discharge where the debtor refuses to obey a lawful order of the court issued in the bankruptcy case.  Under this subsection, a plaintiff must prove that the court issued an order and that the debtor refused to obey that order.  In re Hirsch, Adv. Pro. No. 07-01139-dem, 2009 WL 3297278, at *6 (Bankr. E.D.N.Y. Oct. 13, 2009).

The word "refused" requires more than a technical violation of a court order. In re Demar, 373 B.R. 232, 240 (Bankr. E.D.N.Y. 2007). However, once a plaintiff has shown that the debtor violated a court order, the burden shifts to the debtor to either justify the violation or prove that the violation did not in fact occur. In re Miller, 97 B.R. 760, 765 (Bankr. W.D.N.Y. 1989); see also In re Kokoszka, 479 F.2d 990, 997-998 (2d Cir. 1973) (listing factors relevant to whether violation of an order warrants denial of discharge).

The language of the Preliminary Injunction Order is clear and unambiguous. In its pertinent part, the Preliminary Injunction Order reads:

> **ORDERED**, that Avraham Sofer and his . . . employees . . . be and are enjoined for a period of forty-five (45) days from [November 4, 2013] from entering onto the parking facility located at 980 East 13th Street, Brooklyn, New York (the "Parking Facility") and communicating with any of the vendors that are customers of the Debtor [], nightly parking patrons and advertisement customers of the Debtor or with any customer of the Parking Facility about collecting money or parking on the lot. . .

(Order Granting Preliminary Injunction, Adv. Pro. No. 13-01498-CEC, ECF No. 10 at p. 2.)

The Plaintiff asserts, and the Debtor admits, that the Debtor entered the Parking Facility on November 10, 2013, for the purposes of operating the business formerly located there. (Answer, Adv. Pro. No 14-01005-CEC, ECF No. 5 ¶ 54.) The only justification for violating the Preliminary Injunction Order provided by the Debtor was that he believed that the Individual Lift Stay Order terminated the injunction because it failed to include language extending the Preliminary Injunction Order. However, there is nothing in the record to indicate that the Preliminary Injunction Order was contingent on the continuation of the automatic stay in the Individual Case. Moreover, any reading of the two orders to the contrary ignores the circumstances that led to the Preliminary Injunction Order, which was entered as a result of a month's long struggle between the Debtor and the Trustees regarding the control and operation

of the Parking Facility.  By the Debtor's own admissions, he continued to operate the Parking Facility after both the Corporate and Individual Filing Dates.  Even after the Court authorized the Trustees to operate the Parking Facility in the 721 Orders, the Debtor continued to interfere with the administration of the estates in both the Individual and Corporate Cases.  As a result, this Court issued the Preliminary Injunction Order, which, in no uncertain terms, prohibited the Debtor from entering the premises or operating the Parking Facility until December 19, 2013. Furthermore, the Individual Lift Stay Order is unambiguous with respect to what relief was granted.  In its relevant part, the Individual Lift Stay Order states that:

> It is now, **ORDERED**, the motion is granted to the extent provided herein; and it is further, **ORDERED** that [Adar 980 Realty] may proceed with an eviction action with respect to the property located at 980 East 13th Street, Brooklyn, New York and the State Court may issue a (1) Judgment of Possession in favor of [Adar 980 Realty], (2) a Warrant of Eviction in favor of [Adar 980 Realty], and (3) a Money Judgment in favor of [Adar 980 Realty] against debtor, and it is further **ORDERED**, that [Adar 980 Realty]'s enforcement of any judgment, and any collection effort, against the Debtor is stayed pending further order of this Court; and it is further, **ORDERED**, that the relief granted in this Order is effective immediately, and the 14-day stay pursuant to Bankruptcy Rule 4001 is waived, because an eviction action has no effect on the estate.

(Order Lifting Automatic Stay, Case No. 13-46127-CEC, ECF No. 35 at pp. 3-4 (alterations omitted).)  The only relief contemplated in the Individual Lift Stay Motion was to permit Adar 980 Realty to continue litigation against the Debtor in the eviction action pending in state court. Nowhere in the Individual Lift Stay Order was the Preliminary Injunction Order modified, and nor did it need to be.

Moreover, the Debtor's claim that he did not understand the Preliminary Injunction Order was still in effect does not explain why the Debtor returned to the Parking Facility on November 13, 2013, after he had, by his own admission, been instructed by his attorney to stay away. (Decl. in Opp. to Motion for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶¶ 10-11; Tr. of Hr'g on

November 22, 2013, Case No. 13-46127-CEC, ECF No. 54 at pp. 107-08.)  Additionally, the proceeds collected by the Debtor while operating the Parking Facility in violation of the Preliminary Injunction Order were never turned over to the Trustees.  (Complaint, Adv. Pro. No 14-01005-CEC, ECF No. 1 ¶ 55; Decl. in Opp. to Motion for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶ 7.)

The Plaintiff has shown that the Debtor failed to obey the Preliminary Injunction Order issued by this Court, which prohibited the Debtor or any associates of the Debtor from entering or operating the Parking Facility.  No valid justification for this violation has been proffered. The Debtor has failed to carry his burden to show that his failure to obey a court order was justifiable and, therefore, summary judgment is warranted on this count.

## II.    Section 727(a)(7)

Denial of discharge is also required when "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of [section 727], on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).  As the sole owner of 1040 Management, the Debtor is an insider, as defined in § 101(31), and, therefore, could be denied a discharge in the Individual Case for acts committed in connection with the Corporate Case.

Section 727(a)(2)(B) requires the denial of discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of filing of the petition." 11 U.S.C. § 727(a)(2)(B).  To meet its burden, a plaintiff must demonstrate that the debtor, after the filing of the bankruptcy petition, (1) transferred or concealed property of the estate and did so (2)

with the intent to hinder, delay, or defraud. In re Pisculli, 408 Fed. Appx. 477, 479 (2d Cir. 2011).

### *(1) Transferred or Concealed Property of the Estate*

Under section 541(a), the bankruptcy estate comprises of almost all interests the debtor held pre-petition, including "all legal or equitable interests of the debtor in property as of the commencement of the case . . . [as well as] proceeds, product, offspring, rents, or profits of or from property of the estate. . . ." 11 U.S.C. §§ 541(a)(1), (a)(6).  However, the Bankruptcy Code does not define property interests, rather the Code defers to state law to determine what interests are property of the estate.  Kaufman v. Chalk & Vermilion Fine Arts, LLC, 31 Fed. Appx. 206, 208 (2d Cir. 2002); accord. Butner v. U.S., 440 U.S. 48, 55 (1979).  Under New York law, "[a]mong other things, an asset is any form of personal property with value, including money and written instruments that 'create[],' 'acknowledge[],' or 'evidence[]' a financial obligation, not exempt from liability by statute or common law." Lisa Ng v. Adler (In re Adler), 494 B.R. 43, 62 (Bankr. E.D.N.Y. 2013) (citing N.Y. GEN. CONSTR. LAW §§ 38-39 and N.Y. DEBT. & CRED. LAW § 270), aff'd 2014 WL 4793478 (E.D.N.Y. Sept. 24, 2014).

Here, the Debtor collected money while operating the Parking Facility on November 10, 2014. (Decl. in Opp. to Motion for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶ 7.) Additionally, the Debtor admitted to operating the Parking Facility on other occasions after the Corporate Filing Date. (Answer, Adv. Pro. No 14-01005-CEC, ECF No. 5 ¶¶ 65-66.) Moreover, the Debtor admitted to collecting money from at least one Vendor or Advertisement Customer after the Corporate Filing Date. (Id. ¶ 106.) The broad definition of property of the estate encompasses the monies collected by the Debtor, and, since the monies collected were either owed to 1040 Management on account of a contract between 1040 Management and a third

party, or derived from the Parking Facility that 1040 Management operated, the monies collected by the Debtor are property of the estate in the Corporate Case. In re S. Side House, LLC, 474 B.R. 391, 405 (Bankr. E.D.N.Y. 2012) ("[A]s a general rule, if the debtor retains an interest in the property generating post-petition proceeds, the proceeds from that property are likewise property of the estate.").

The Debtor denies there are monies to turn over to the Trustees; however, if this is so, it is because the funds have already been converted for the Debtor's personal use. (Answer, Adv. Pro. No. 14-01005, ECF No. 5 ¶128.) The Debtor admitted to collecting funds after the Corporate Filing Date. (Id. ¶¶ 61-74, 106; Decl. in Opp. to Motion for Contempt, Case No. 13-46127-CEC, ECF No. 48 ¶ 7.) Moreover, the Debtor stated that the funds collected were used "[t]o cover the lawyer fees and payroll." (Answer, Adv. Pro. No. 14-01005, ECF No. 5 ¶¶ 61-74.) Thus, the Debtor has transferred property of the estate after the filing of the bankruptcy petition in the Corporate Case.

### *(2) With the Intent to Hinder, Delay, or Defraud*

While fraudulent or improper intent is sometimes shown via direct proof, courts often rely on "badges of fraud" to establish the intent required under § 727(a)(2) based on circumstantial evidence. In re Boyer, 328 Fed. Appx. at 715. Badges of fraud include

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

In re Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983); accord. In re Boyer, 328 Fed. Appx. at 715. A bankruptcy court has sufficient grounds to conclude that the debtor acted with intent to hinder,

delay, or defraud when multiple badges of fraud are present. See Kaiser, 722 F.2d at 1583 (finding fraudulent intent based upon the presence of two badges of fraud).

Here, the undisputed facts show that at least three badges of fraud are present with respect to the Corporate Case: (1) the Debtor retained the benefit of the transferred property as it was used to pay for his legal fees, (2) the cumulative effect of the Debtor's efforts to operate the Parking Facility and to collect money on behalf of 1040 Management, and his failure to turn those funds over, hindered the Corporate Trustee's administration of the estate, and (3) the chronology of the events in the Individual Case and the Corporate Case negates any plausible justification for the Debtor's actions and points to the conclusion that those actions were intended to hinder, delay, or defraud.

Not only did the Debtor transfer property of the estate in the Corporate Case, the Debtor refused repeated demands by the Corporate Trustee to cease all operations of the Parking Facility and turn over all funds collected after the Corporate Filing Date. (Answer, Adv. Pro. No. 14-01005-CEC, ECF No. 5 ¶ 69; Complaint, Adv. Pro. No. 14-01005-CEC, ECF No. 1 ¶ 32.) Furthermore, the Debtor went so far as to contact Vendors and Advertising Customers to direct that they make payments direct to the Debtor and not the trustee in the Corporate Case. (Answer, Adv. Pro. No. 14-01005-CEC, ECF No. 5 ¶¶ 71, 73.)  This evidence is more than sufficient to conclude that the Debtor transferred property of the estate with intent to hinder, delay, or defraud the Corporate Trustee.  See Kaiser, 722 F.2d at 1583.

There is no *de minimis* exception for fraudulent conduct by a debtor in bankruptcy. In re Feynman, 77 F.2d 320,322 (2d Cir. 1935) ("Courts will not measure the dishonesty of a bankrupt, once that be shown."); see also Kaganowitz v. Manufacturers Trust Co., 145 F.2d 754, 756 (2d Cir. 1944) ("That the amounts here involved were small is no defense.").

The presence of multiple badges of fraud and the Debtor's admissions that he transferred the property of 1040 Management in order to pay attorney's fees and payroll constitute ample evidence of the Debtor's intent to hinder, delay, or defraud the creditors and the trustee in the Corporate Case. As a result, summary judgment is warranted on this count.

### III.    Other Counts

The Plaintiff also alleges that Debtor should be denied a discharge because he concealed property of the Debtor's estate both within one year prior to and after the Individual Filing Date. Finally, the Plaintiff alleges that the Debtor knowingly or fraudulently made false oaths or accounts in connection with the Individual Case. As ample grounds are present to deny the Debtor's discharge pursuant to §§ 727(a)(6)(A) and 727(a)(7), these claims are not addressed.

### CONCLUSION

For the foregoing reasons, summary judgment is warranted and the Debtor's discharge is denied pursuant to §§ 727(a)(6)(A) and 727(a)(7). A separate order will issue.



**Dated: Brooklyn, New York**
**October 31, 2014**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**